IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| SAMANTHA L. MILLER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-21-323-GLJ |
| ) | |
| KILOLO KIJAKAZI, ) | |
| Commissioner of the Social ) | |
| Security Administration, ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

Claimant, Samantha Lee Miller, requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons discussed below, the Commissioner's decision is hereby REVERSED and the case is REMANDED to the Commissioner for further proceedings consistent with this opinion.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the

national economy[.]" 42 U.S.C. § 423(d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether the correct legal standards were applied. *See Hawkins v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). Instead, the Court must review the record as a whole, and "[t]he substantiality of the evidence must take into account whatever in the record fairly detracts

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity. Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or his impairments *is not* medically severe, disability benefits are denied. If he *does* have a medically sever impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that he lacks the residual functional capacity ("RFC") to return to her past relevant work. At step five, the burden shifts to the Commissioner to show that there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience and RFC. Disability benefits are denied if the claimant can return to any of his past relevant work or if his RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

from its weight." *Universal Camera Corp. v. NLRB*, U.S. 474, 488 (1951). S*ee also Casias*, 933 F.2d at 800-01.

## Claimant's Background

Claimant was 43 years old at the time of the administrative hearing. (Tr. 112). She completed one year of college. (Tr. 41). She has past work experience as an Outpatient Receptionist, Order Clerk, and Cashier/Stocker. (Tr. 27). Claimant alleges an inability to work since November 7, 2019, due to depression, PTSD, a sellar arachnoid cyst, scoliosis, post-heart attack, sleep apnea, anemia, as well as shoulder, back, and neck pain. (Tr. 264).

## Procedural History

On December 2, 2019, Claimant protectively applied for disability insurance benefits and supplemental security income under Title II (42 U.S.C. § 401, *et seq*.) and Title XVI (42 U.S.C. § 1381, *et seq*.) of the Social Security Act respectively. Her applications were denied initially and upon reconsideration. On March 18, 2021, Administrative Law Judge ("ALJ") Doug Gabbard conducted an administrative hearing in McAlester, Oklahoma, and entered an unfavorable decision on May 28, 2021. (Tr. 12-28, 37-64). The Appeals Council denied review making the ALJ's opinion the Commissioner's final decision for the purpose of this appeal. *See* 20 C.F.R. § 404.981.

## Decision of the Administrative Law Judge

The ALJ made his decision at step four of the sequential evaluation. (Tr. 27-28). At step two he determined that Claimant had the severe impairments of morbid obesity, cervical degenerative disc disease, status post laminectomy, lumbar degenerative disc disease, status post fusion, and right shoulder degenerative joint

disease/impingement. (Tr. 14). He found at step three that Claimant did not meet any Listing. (Tr. 20). At step four he found that the claimant had the residual functional capacity ("RFC") to perform light work except that she could frequently climb ramps or stairs, could never climb ladders, ropes, or scaffolding, could occasionally stoop, kneel, crouch, and crawl, and could frequently climb ramps or stairs as well as reach overhead with her dominant arm. (Tr. 21). The ALJ then concluded that she could return to her past relevant work ("PRW") as either an outpatient receptionist, order clerk, or cashier/stocker. (Tr. 27).

## Review

Claimant contends that the ALJ erred by failing to consider a relevant Listing, failing to account for all of her impairments when assessing her RFC, and failing to properly assess the consistency of Claimant's complaints with the evidence. More specifically, Claimant contends the ALJ failed to discuss whether her migraines could equal Listing 11.02, failed to consider the effect her migraines had on her RFC, and failed to analyze the consistency of her allegations of pain with the evidence of record. The Court agrees that the ALJ erred in formulating Claimant's RFC by failing to account for her migraines, and the decision of the Commissioner should therefore be reversed.

The ALJ found at step two that Claimant had the severe impairments of morbid obesity, cervical degenerative disc disease, status post laminectomy, lumbar degenerative disc disease, status post fusion, and right shoulder degenerative joint disease/impingement. (Tr. 14). Additionally, he found Claimant had the nonsevere impairments of depression, anxiety, PTSD, substance use (cannabis), scoliosis, sellar arachnoid cyst, sleep apnea, essential hypertension, breast lump, chronic fatigue syndrome,

coronary artery disease, status post myocardial infarction, peripheral neuropathy, urticaria cold, vitamin D deficiency, respiratory disorder, GERD, viral gastroenteritis, pulmonary nodule, history of pulmonary embolism, migraines, pituitary gland disorder, hydrocephalus with shunt placement, arachnoid cyst, empty sellar syndrome, coronary artery disease post heart stents, and VP shunt. (Tr. 15).

The medical evidence relevant to this appeal reveals that Claimant has consistently sought treatment for her migraines and related diagnoses. (Tr. 1073-1618). During regular visits to McAlester Regional Health Center from June 18, 2018, through April 13, 2020, Dr. David Campbell and members of Claimant's treatment team consistently diagnosed her with migraine headaches (Tr. 1073-1170, 1206-30). Claimant visited the McAlester Emergency Department on November 16, 2019, for numbness in her face, arm, and leg, and Dr. Victoria Keeton, fearing a stroke, ordered a CT scan which revealed a 1.4 cm sellar arachnoid cyst, though it was most likely benign. (Tr. 1044, 1053). On May 5, 2020, Claimant visited Dr. Chad Glenn at OU Physicians Neurosurgery who noted Claimant's long history of headaches and previous migraine diagnosis as well as recent reports of blurred vision and episodes of vision loss. (Tr. 1477). Dr. Glenn found that it was possible she suffered from idiopathic intracranial hypertension ("IIH") rather than a sellar arachnoid cyst, but that further testing was necessary. (Tr. 1480-81).

On May 12, 2020, Claimant visited Dr. James O'Brien at the Dean McGee eye institute on a referral from Dr. Glenn. (Tr. 1438) Neuroimaging revealed no structural problems with her eyes and further examination made the previous diagnosis of a cellar arachnoid cyst unlikely. *Id.* On June 2, 2020, Dr. Glenn again noted her migraine diagnosis

and recommended against a shunt placement before recommending tests to determine if Claimant had empty sella syndrome. (Tr. 1466-68). Claimant saw Dr. Kevin Wood on June 26, 2020, who discussed Claimant's fears that her headaches were the result of some as-yet-undiscovered malady and not just migraines. (Tr. 1459). He agreed that Claimant likely suffered from empty sella syndrome, but noted that Claimant was uninterested in more definitive testing. *Id.*

On July 13, 2020, Claimant presented to the OU Medical Center Neuro Intensive Care Unit for an external ventricular drain ("EVD") trial. (Tr. 1508). The next day, neurologist Dr. Danny Samkutty noted that Claimant reported near-complete resolution to her headaches following the EVD trial and discussed factors that indicated a diagnosis of IIH and those that indicated migraines. On July 17, 2020, Claimant underwent surgery to place a ventriculoperitoneal ("VP") shunt to relieve symptoms related to her diagnosis of hydrocephalus. (Tr. 1529-32). Although this procedure initially provided relief, on November 17, 2020, Claimant again saw Dr. Glenn with complaints of progressively worsening headaches; he adjusted the settings of the shunt to correct for over-drainage. (Tr. 1596-98).

Claimant presented for follow up on December 8, 2020, via telemedicine due to a positive COVID test. (Tr. 1593-94). She expressed uncertainty as to whether the shunt adjustment had been helpful and Dr. Glenn noted that her COVID symptoms may be exacerbating her pre-COVID symptoms. He indicated that he would attempt to optimize her symptoms as much as possible but that "she would very likely need to continue medical therapy for her migraines." *Id.* at 1594. On January 5, 2021, Dr. Gina Clark diagnosed

Claimant with chronic migraine without aura, not intractable, and without status migrainosus before referring her to neurology for treatment. (Tr. 1618).

State examiners determined initially that Claimant had the RFC to perform light work. Upon reconsideration, the examiner likewise found she could perform light work with additional postural limitations. (Tr. 90-106, 112-43).

At the administrative hearing, Claimant testified about her various symptoms, specifically noting a night in November 2019 when her doctors mistakenly thought she may have had a stroke. (Tr. 49). She then testified that she suffers from a rare disorder requiring a brain shunt before describing her experience of recurrent and debilitating migraines. (Tr 50). Claimant testified that, while the shunt helped initially, the headaches returned "with a vengeance" and she now experiences constant headaches. (Tr. 51-52). She later testified that further adjustment of her brain shunt had no effect and that catching COVID had complicated attempts at further treatment. (Tr. 59).

The ALJ then elicited testimony from a vocational expert ("VE") to determine what jobs a claimant could perform given the RFC described above. (Tr. 63-64). The VE testified that such a claimant could perform Claimant's past occupations of Outpatient Receptionist, DICOT § 237.367-038, Order Receptionist, DICOT § 249.362-026, and Cashier/Stocker, DICOT § 290.477-014. (Tr. 64). The ALJ then offered a modified hypothetical in which the same claimant would require at least two unscheduled work absences a month and would be off task twenty percent of the time. *Id.* The VE testified that such a person would be unemployable. *Id.*

In his written opinion at step four, the ALJ summarized Claimant's hearing testimony and much of the evidence in the record. (Tr. 21-26). He then found that Claimant's statements about the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with treatment records and noted documentation of mild to benign findings on physical examinations. As an example, he discussed inconsistencies in Claimant's subjective complaints of gait abnormalities when compared to multiple instances of normal findings on examination. (Tr 26-27). He provides no discussion of how Claimant's headaches and related medical conditions impact her RFC. The ALJ then found the state examiners' opinions largely consistent with the record, but that the reconsideration was more persuasive than the initial as it included postural limitations. (Tr. 27). Specifically noting her back problems, morbid obesity, subjective pain complaints, cervical pain, and shoulder problems, the ALJ found that the RFC adequately addressed Claimant's impairments. *Id.* He then concluded that Claimant is not disabled because she is capable of performing her past relevant work. *Id.*

Claimant contends that the ALJ erred at step four by failing to properly consider the impact her headaches have on her RFC, and the Court agrees. The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (*e.g.*, laboratory findings) and nonmedical evidence (*e.g.*, daily activities, observations). Soc. Sec. Rul. 96-8p, 1996 WL 374184, at *7 (July 2, 1996). "When the ALJ has failed to comply with SSR 96-8p because he has not linked his RFC determination with specific evidence in the record, the court cannot adequately assess whether relevant evidence supports the ALJ's RFC determination." *Jagodzinski v. Colvin*,

2013 WL 4849101, at *2 (D. Kan. Sept. 11, 2013) (*citing Brown v. Commissioner of the Social Security Administration*, 245 F. Supp 2d 1175, 1187 (D. Kan. 2003)). Here the ALJ has connected no evidence in the record to instruct this Court as to how the stated RFC accounts for Claimant's twenty-seven nonsevere impairments, including the documented headaches and related diagnoses. This is error because the ALJ is required to consider all of a claimant's impairments – both severe and nonsevere – singly and in combination, when formulating a claimant's RFC. *See, e.g., Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008) ("'At step two, the ALJ must 'consider the combined effect of all of [Claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity [to survive step two]. Nevertheless, any error here became harmless when the ALJ reached the proper conclusion that [Claimant] could not be denied benefits conclusively at step two and proceeded to the next step of the evaluation sequence." (*quoting Langley v. Barnhart*, 373 F.3d 1116, 1123-24 (10th Cir. 2004) (*quoting* 20 C.F.R. § 404.1523)). *See also Hill v. Astrue*, 289 Fed. Appx. 289, 292 (10th Cir. 2008) ("But this does not mean the omitted impairment simply disappears from his analysis. In determining the claimant's RFC, the ALJ is required to consider the effect of *all* of the claimant's medically determinable impairments, both those he deems 'severe' and those 'not severe.'" [emphasis in original] [citations omitted]. Because the ALJ failed to account for Claimant's documented headaches and other nonsevere impairments, the RFC as articulated is incapable of meaningful review. *See Guerra v. Astrue*, 918 F. Supp. 2d 1180, 1188 (D. Kan. 2013). ("When the ALJ has failed to comply with SSR 96-8p because he has not linked his RFC determination with specific evidence in the record, the

court cannot adequately assess whether relevant evidence supports the ALJ's RFC determination. Such bare conclusions are beyond meaningful judicial review."), see also *Crane v. Kijakazi*, 2021 WL 4270135, at *3 (E.D. Okla. Aug 31, 2021) ("Because the ALJ failed to account for the claimant's documented shoulder impairments . . . the RFC does not wholly account for his impairments."). Additionally, this reflects a failure to assess the combined effect of all the claimant's impairments – both severe and nonsevere – for her RFC even though "the ALJ's RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence." *Wells v. Colvin*, 727 F,3d 1061, 1065 (10th Cir. 2013) (*quoting* Soc. Sec. Rul. 96-8p, 1996 WL 374184, at *7).

The Commissioner argues that the ALJ did consider Claimant's migraines in his narrative discussion of her RFC. While it is true that the ALJ did briefly mention Claimant's migraines while summarizing her medical history at step four, this is insufficient without relating the evidence to his conclusions. *See Guerra v. Astrue*, 918 F. Supp. 2d at 1188 ("It is insufficient for the ALJ to only generally discuss the evidence, but fail to relate that evidence to his conclusions.") (citing *Cruse v. U.S. Dept. of Health & Human Services*, 49 F.3d 614, 618 (10th Cir. 1995)). Accordingly, the decision of the ALJ is hereby reversed and the case remanded to the ALJ for further analysis of *all* the evidence related to Claimant's impairments. If such analysis on remand results in any adjustment to Claimant's RFC, the ALJ should then redetermine what work, if any, Claimant can perform and ultimately whether she is disabled.

## Conclusion

The Court finds that the decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Accordingly, the decision of the Commissioner is REVERSED and the case is REMANDED for further proceedings consistent herewith.

**DATED** this 28th day of March, 2023.

_____
**GERALD L. JACKSON**
**UNITED STATES MAGISTRATE JUDGE**